**In re James Edward STAUB, Mary Virginia Staub, Debtors.**

**Donald F. WALTON, Acting United States Trustee, Region 21, Plaintiff,**

**v.**

**James Edward STAUB, Mary Virginia Staub, Defendants.**

**Bankruptcy No. 95–60432.**

**Adversary No. 96–06002A.**

United States Bankruptcy Court, S.D. Georgia, Statesboro Division.

March 31, 1997.

Columbus Gilmore, Senior Attorney–Advisor, Office of the United States Trustee, Savannah, GA, for Plaintiff.

Jesse C. Stone, Merrill, Stone and Parks, Swainsboro, GA, for Defendant.

### ORDER

JOHN S. DALIS, Chief Judge.

Donald F. Walton, Acting United States Trustee, Region 21 (hereinafter "U.S. Trustee") by this adversary proceeding seeks to revoke the discharge granted to the defendants James Edward Staub and Mary Virginia Staub (hereinafter "Debtors"). From the evidence presented at trial and considering post trial briefs submitted, I make the following findings of fact and conclusions of law finding that the Debtors' discharge was procured by fraud and hereby revoke same.

The Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 United States Code on August 14, 1995. The notice of the bankruptcy filing issued by the clerk of this court established November 13, 1995 as the deadline to file a complaint objecting to the discharge of the debtor. Mr. Christopher W. Willis, attorney for Mr. Michael Kotula, a listed creditor in the Debtors' bankruptcy case, by letter dated November 14, 1995 addressed to Ms. Anne Moore, the case trustee, alleged that the Debtor James Edward Staub has three sources of income, his regular salaried employment at Brooks Instruments, regular National Guard pay, and periodic income from a business Mr. Staub operated and called Black Diamond Research. Ms. Moore passed this information to the U.S. Trustee, received November 20, 1995. On November 29, 1995 the Chapter 7 discharge was issued to the Debtors. On January 19, 1996 the United States Trustee initiated this adversary proceeding seeking revocation of the Debtors' discharge, alleging that the discharge was procured by fraud based upon the Debtors' failure to disclose Mr. Staub's military income and the business operations named Black Diamond Research. The facts establishing the basis for the United States Trustee's complaint were known to the creditor Mr. Kotula prior to the bar date of November 13, 1995 and were known to the U.S. Trustee after the bar date but before the issuance of the discharge.

The U.S. Trustee alleges that the Debtors omitted from their Chapter 7 petition and schedules the following information:

(a) Wachovia Bank checking account # 11–962–493 on schedule "B", Personal Property;

(b) Debtor James Edward Staub's Air Force Reserve pay on schedule "I", Current Income of Individual Debtors;

(c) income from the Debtors' business, Black Diamond Research, from the beginning of calendar year 1995 to the date the Debtors filed their Statement of Financial Affairs, question number 1;

(d) closed Southtrust Bank checking account # 40–892–989 on the Statement of Financial Affairs, question number eleven; and

(e) the nature, location and name of the business in which they were involved within the

two (2) years immediately preceding the filing of this case on their Statement of Financial Affairs, question number 16A.

The U.S. Trustee further alleges that at the § 341 meeting of creditors the Debtors denied, under oath, that they operated a business within two (2) years immediately preceding the filing of this case. The Debtors did not amend their schedules or statement of financial affairs to disclose the omitted information and signed declarations under penalty of perjury that the schedules and statement of financial affairs were true and accurate.

In response, the Debtors, while not denying the factual basis for the U.S. Trustee's complaint, dispute the conclusions drawn by the U.S. Trustee. The Debtors contend that their failure to disclose the checking accounts was an inadvertent error and immaterial. They contend that their failure to disclose Mr. Staub's Air Force Reserve pay was due to his pending retirement and in any event the Reserve pay was insignificant income. Regarding Black Diamond Research, the Debtors contend that this was not a business operated by the Debtors but merely sporadic income generated by Mr. Staub during a period of unemployment leading up to this bankruptcy filing. The Debtors also contend that even if the U.S. Trustee's allegations and conclusions drawn are true, they only establish a basis for denial of a discharge under 11 U.S.C. § 727(a)(4)(A) [1], an insufficient basis for revocation of discharge under 11 U.S.C. § 727(d)(1) [2]. The Debtors allege that because the time for objecting to discharge has passed, their discharge may be revoked only if it was obtained through fraud i.e., if the U.S. Trustee proves that had the undisclosed information been disclosed the discharge would not have been granted in the first instance. The Debtors also contend, regardless of the foregoing, that the U.S. Trustee is barred from bringing this complaint because 1) the creditor who provided the information to the U.S. Trustee knew of the information in sufficient time to object to the discharge and the timing of this knowledge is imputed to the U.S. Trustee; and 2) the information forming the basis of the U.S. Trustee's complaint was known to the U.S. Trustee prior to the entry of the discharge.

Case precedent in this district supports the U.S. Trustee's position that a complaint seeking revocation of discharge pursuant to § 727(d)(1) may be based upon a determination under § 727(a)(4) that the debtors knowingly and fraudulently made a false oath or account in connection with their bankruptcy case. *See, Walton v. Crosby (In re Crosby)*, Ch. 7 Case No. 91–20963, Adv. No. 92–2073 (Bankr.S.D.Ga. June 21, 1993); *Walton v. Miles (In re Miles)*, Ch. 7 Case No. 92–20115, Adv. No. 92–2074 (Bankr.S.D.Ga. June 21, 1993). In these related cases, Judge Lamar W. Davis, Jr. found that:

> ... Section 727(d)(1) is derived from Section 15 of the Bankruptcy Act, which required fraud in fact, such as the intentional omission of assets from the debtor's schedules." 4 *Collier on Bankruptcy* ¶ 727.15 [2] at p. 727–109. (15th Ed.1993). A false statement in a debtor's schedules is sufficient ground for denial of discharge under Section 727 if the statement was material and knowingly made with fraudulent intent. 11 U.S.C. § 727(a)(4). *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984).... Debtors are under an affirmative duty to read their bankruptcy schedules and to satisfy themselves that they are true and correct to the best of their knowledge, information and belief [*In re Magnuson*, 113 B.R. 555, 559 (Bankr.D.N.D.1989) ]. *See also, Matter of Lila Young*, Chapter 13 case No. 92–41728 (Bankr.S.D.Ga. April 19, 1993 Davis, J.) (Debtor's Chapter 13 petition filed in bad faith converted to a Chap-

---

1. 11 U.S.C. § 727(a)(4)(A) provides:

   (a) The court shall grant the debtor a discharge, unless— ...
   (4) the debtor knowingly and fraudulently, in or in connection with the case—
   (A) made a false oath or account.

2. 11 U.S.C. § 727(d)(1) provides:

   (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
   (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

ter 7 proceeding where debtor failed to list over $60,000.00 in assets). Failure on the part of Debtors to promptly amend incorrect schedules is equivalent to fraud which would warrant revocation of discharge under Section 727(d)(1). *Magnuson,* 113 B.R. at [559]. A debtor's intent to defraud may be established by circumstantial evidence. *In re Simms [Sims ],* 148 B.R. 553, 557 (Bankr.E.D.Ark.1992).

*Crosby* supra at 4–5; *Miles* supra at 7–8. A creditor objecting to a discharge under § 727(a)(4)(A) must prove that the false oath was made knowingly and fraudulently about a material matter. *Swicegood v. Ginn,* 924 F.2d 230 (11th Cir.1991); *Raiford v. Abney (In re Raiford),* 695 F.2d 521, 522 (11th Cir.1983). See also, *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616 (11th Cir.1984). According to the Eleventh Circuit in *Chalik:*

> The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, *business dealings,* or the existence and disposition of his property. 748 F.2d at 618. [emphasis added]

*Western Temp. Services Inc. v. Day (In re Day),* Ch. 7 Case No. 91–40674, Adv. Nos. 91–4083 & 91–4138, slip op. at 24, 1993 WL 734838 (Bankr.S.D.Ga. March 13, 1993) Fraudulent intent may be inferred from all of the facts and circumstances of a case. *Aetna Ins. Co. v. Nazarian (In re Nazarian),* 18 B.R. 143, 146 (Bankr.D.Md.1982); *see also, Future Time, Inc. v. Yates,* 26 B.R. 1006, 1007 (M.D.Ga.1983) *aff'd,* 712 F.2d 1417 (11th Cir.1983). The U.S. Trustee has the burden of proving the basis for objection to discharge for fraud and thereby revocation of discharge by a preponderance of the evidence. Federal Rule of Bankruptcy Procedure (FRBP) 4005; *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (nondischargeability of debt under 11 U.S.C. § 523(a) for fraud or otherwise must be proven by preponderance of the evidence); *Farouki v. Emirates Bank Int'l Ltd.,* 14 F.3d 244 (4th Cir.1994) (extending the *Grogan* holding as requiring proof of objection to discharge under § 727 by a preponderance of the evidence.)

■ The U.S. Trustee has, by a preponderance of the evidence, established a basis for denial of discharge pursuant to § 727(a)(4)(A) and therefore for revocation of discharge under § 727(d)(1). Regarding Mr. Staub's business, Black Diamond Research, the Debtors' schedules make no reference to this income-producing enterprise. From the evidence presented, it is apparent that the Debtors intentionally omitted all references to Black Diamond Research from their schedules, including the existence of the bank account used for this business enterprise. The Debtors filed their Chapter 7 case in 1995. The statement of financial affairs question number one requires the disclosure of "the gross amount of income the debtor has received from employment, trade, or profession, or from operation of debtor's business from the beginning of this calendar year to the date this case was commenced." In response, the Debtors disclosed their *1994* income because the appropriate disclosure would have required them to reveal the income derived from Black Diamond Research. For calendar year 1995, the Debtors' U.S. Individual Income Return Tax Return 1040 reveals income of $88,064.55, part of which was generated from Black Diamond Research, which income exceeded by more than $14,000.00 their 1994 income. Plaintiff's Exhibits 7 and 8. The Debtors contend that Black Diamond Research never materialized as a business enterprise because it was not separately incorporated, the Debtors did not obtain a federal tax identification number, and the Debtors did not register Black Diamond Research as a trade name. However, these contentions do not change the fact that Mr. Staub did business as Black Diamond Research and generated substantial income during calendar year 1995. Plaintiff's Exhibits 3, 4 and 5. Furthermore, Mr. Staub's Air Force Reserve pay during calendar year 1995 totaled $5,087.16. This amount was not reported in his schedules, and does not constitute an insignificant sum as alleged by the Debtors. Plaintiff's Exhibit 6. Whether Mr. Staub intended to continue his Air Force Reserve status in calendar year 1996 is irrelevant to the Debtors' obligation to disclose

this income at the time of filing in August, 1995.

The U.S. Trustee has established that the Debtors knowingly and fraudulently in connection with their Chapter 7 bankruptcy case made a false oath or account by failing to disclose their 1995 gross income, including income derived from Black Diamond Research, by failing to disclose that the Debtor James Edward Staub did business in calendar year 1995 under the name Black Diamond Research, by failing to disclose his affiliation with and 1995 income from the United States Air Force Reserve, by failing to disclose the existence of two checking accounts, one of which was used as the business account for Black Diamond Research, by failing to amend their schedules and by failing to disclose the Black Diamond Research business at the § 341 meeting of creditors. The U.S. Trustee has established a basis for denial of discharge under § 727(a)(4)(A) in that the Debtors acted fraudulently by failing to disclose required information thereby giving a false oath and such fraud, if timely known by the petitioning party would have led to a denial of the Debtors' discharge which is sufficient to establish that the discharge granted the Debtors was obtained through fraud, warranting revocation under § 727(d)(1).

■ Section 727(d)(1) bars the Debtors' contention that the timing of the creditor's knowledge of the Debtors' fraud should be imputed to the U.S. Trustee. Section 727(d)(1) requires that the party bringing a complaint to revoke a discharge " . . . not know of such fraud until after the granting of such discharge." The U.S. Trustee did not know of the fraud until after the bar date for filing complaints objecting to discharge. The Debtors appeal to equity, complaining that permitting Mr. Kotula, the creditor, to accomplish, working through the U.S. Trustee, the revocation of the Debtors' discharge, a result not available to him because of his prior knowledge, is patently unfair and inequitable. To say the Debtors lack "clean hands" to make this equitable appeal understates the obvious, and their appeal to equity is outrageous considering their own fraud.

■ The Debtors' reliance upon the "plain language" of the statute as an additional technical defense to the U.S. Trustee's complaint is also ill conceived. The Debtors contend that a gap period exists between the bar date for the filing of complaints objecting to discharge and the actual grant of the discharge. In this case the bar date for objecting to the Debtors' discharge expired November 13, 1995. The discharge was issued November 29, 1995. According to the Debtors, as the U.S. Trustee received the information forming the basis for this complaint to revoke discharge on November 20, 1995, the U.S. Trustee had knowledge of the operative facts prior to the granting of the discharge and as such is barred from bringing this complaint. *Powell v. First Nat'l Bank (In re Powell)*, 113 B.R. 512, 513 (W.D.Ark.1990). In *Powell*, the court stated:

> It is true that it is difficult, perhaps possible, to imagine why these bodies [Congress and the Supreme Court] would have wanted to allow discharges to be avoided by frauds discovered within 60 days of the creditors' meeting regarding discharge and by frauds discovered after discharge, but not by frauds discovered in the interim. But the Court does not conceive it to be its job to rationalize this statute and the rule. *Id.* at p. 513

I respectfully disagree. It is precisely the responsibility of the court to interpret, where possible, the statute and the rule in a manner that makes rational sense. *Nissan Motor Acceptance Corp. v. Daniels (In re Daniels)*, 163 B.R. 893, 896–897 (Bankr.S.D.Ga.1994) (It is the court's duty to interpret the Bankruptcy Code and Rules consistently with each other, but where conflict exists, provisions of the Code shall take precedence.) The interpretation advanced by the Debtors affords persons committing fraud in their Chapter 7 case and in the procurement of their discharge a safe haven, the gap period described, to confess their sins, i.e. to disclose their fraud and avoid any consequence, a plainly unfair and inequitable result. When a discharge is not entered "forthwith" after the expiration of the FRBP 4004(a) period and until a discharge is actually entered, even though a complaint objecting to discharge under § 727(a) would not be timely, a party may properly file a complaint under

§ 727(d) to revoke the discharge for conduct occurring prior to the expiration of the FRBP 4004(a) period which the party did not discover in time to file a complaint under § 727(a). *England v. Stevens (In re Stevens)*, 107 B.R. 702 (9th Cir. BAP 1989). The administrative delay in the issuance of the discharge does not create a safe haven gap period where individuals procuring a bankruptcy discharge through fraud may avoid the consequence of their conduct.

It is therefore ORDERED that the discharge issued to the Debtors in this case is revoked.